# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES MICHAEL KING,

      Plaintiff,

v.                                      CIV 16-1147 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social
Security Administration,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 21*) filed on June 2, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

This is Plaintiff's second appeal. Mr. James King (Plaintiff) protectively filed applications with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on October 6, 2009, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act on October 21, 2009.

---

[1] Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Administrative Record[2] (AR) at 57, 122-26. Plaintiff alleged a disability onset date of July 15, 2009. AR at 122, 124. Because Plaintiff's earning record showed that he had "sufficient quarters of coverage to remain insured through June 30, 2011[,]" Plaintiff was required to "establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 612.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 57-59) and on reconsideration (AR at 70-76). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his applications. AR at 77-79. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 29-56. ALJ Ann Farris issued an unfavorable decision on April 25, 2012. AR at 8-28. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 6-7), which the Council denied on June 6, 2013 (AR at 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff appealed ALJ Farris's decision to this Court. *See King v. Colvin*, CV 13-0730 JCH/RHS, Compl. (D.N.M. Aug. 8, 2013). The Commissioner filed an Agreed Motion to Reverse and Remand for Further Administrative Proceedings on July 21, 2014, and moved the Court to reverse and remand for the ALJ to "properly evaluate the severity of Plaintiff's alleged impairments . . . ." *See King*, CV 13-0730, Agreed Mtn to Reverse & Remand (D.N.M. July 21, 2014). The Honorable Judith C. Herrera reversed and remanded the case "for further administrative action pursuant to sentence four (4)

---

[2] Document 14-1 comprises the sealed Administrative Record. *See Doc. 14-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g)[,]" on August 1, 2014. *See King*, CV 13-0730, Order (D.N.M. Aug. 1, 2014) (citation omitted).

On May 5, 2016, ALJ Ann Farris held a second *de novo* hearing. AR at 634-90. ALJ Farris then issued a partially favorable decision on June 20, 2016, finding that Plaintiff was not disabled before April 19, 2016, but was disabled thereafter.[3] AR at 634-90. There is no evidence that Plaintiff asked the Appeals Council to review ALJ Farris's decision, so the ALJ's decision became the final decision of the Commissioner 60 days after June 20, 2016. *See* AR at 502. Plaintiff then filed a suit in this Court seeking remand for a rehearing. *Doc. 1.*

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

---

[3] ALJ Farris also specifically found that, for the purposes of Plaintiff's DIB application, Plaintiff "was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through June 30, 2011, the date last insured." AR at 622.

expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at Step Five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[4] ALJ Farris found that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date." AR at 615 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that "[s]ince the alleged onset date of disability, July 15, 2009, [Plaintiff] has had the following severe impairments: status post fusion L4-S1, status post knee replacement, varicose veins, dysthymia, cluster B personality traits, post-traumatic stress disorder ('PTSD'), and schizophrenia which was severe by the established onset date." AR at 615 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

---

[4] ALJ Farris first found that Plaintiff "met the insured status requirements of the Social Security Act through June 30, 2011." AR at 615.

At Step Three, the ALJ found that since Plaintiff's "alleged onset date of disability, July 15, 2009, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 615 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . [were not] fully supported . . . ." AR at 619. The ALJ considered the evidence of record, including records from Keith Harvie, D.O., Mark Erasmus, M.D., William Wagner, M.D., E.B. Hall, M.D., Pamela Black, M.D., Saverio Sava, M.D., Kurt Johnson, M.D., consultative examinations with Steven Baum, Ph.D., (one in 2010, a second in 2016), and testimony from Plaintiff and his ex-wife, Nuran King. AR at 615-20.

ALJ Farris found that "[s]ince July 15, 2009, [Plaintiff] has been unable to perform any past relevant work." AR at 620 (citing 20 C.F.R. §§ 404.1565, 416.965). Ultimately, the ALJ found that prior to April 19, 2016, Plaintiff

> [had] the [RFC] to perform light work (lift 20 pounds occasionally, stand/walk six hours in an eight-hour workday and sit six hours in an eight-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b) except he must be able to alternate between sitting and standing hourly. [He] cannot kneel, crouch or crawl, but he can occasionally climb, balance and stoop. He must avoid extreme cold and environmental hazards and can have occasional interaction with the public.

AR at 616. The ALJ found that beginning on April 19, 2016, Plaintiff's "age category changed, . . . [and] there are no jobs that exist in significant numbers in the national

economy that [Plaintiff] could perform." AR at 621 (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.920(c), and 416.966).

In order to determine Plaintiff's ability to perform work prior to April 19, 2016, ALJ Farris "asked the vocational expert whether jobs exist in the national economy  for an individual with [Plaintiff's] age, education, work experience, and" RFC. AR at 621. The VE testified that an individual with Plaintiff's RFC would be able to perform occupations such as mail clerk and document preparer. AR at 621. ALJ Farris noted that the VE's "testimony is inconsistent with the information contained in the Dictionary of Occupational Titles," (DOT) but "there is a reasonable explanation for the discrepancy. The [DOT] does not address sit/stand options, in which case we have relied upon the [VE's] personal observations and expertise." AR at 621. The ALJ found that prior to April 19, 2016, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy[,]" and "a finding of 'not disabled'" was appropriate. AR at 621. Beginning on April 19, 2016, "there are no jobs that exist in significant numbers in the national economy that [Plaintiff] could perform[,]" and he was disabled as of that date.[5] AR at 621.

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.*

---

[5] ALJ Farris noted that Plaintiff's "substance use disorder(s) [was] not a contributing factor material to the determination of disability." AR at 622 (citing 20 C.F.R. §§ 404.1535, 416.935).

*Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

### A. The ALJ adequately explained the standing/walking limitation in Plaintiff's RFC.

Plaintiff asserts that the ALJ's decision is deficient because it does not include a function-by-function analysis of Plaintiff's abilities in the areas of standing and walking. *Doc. 21* at 17. Plaintiff contends that the ALJ's restrictions on Plaintiff's ability to stand/walk "is more in line with the performance of sedentary work, which requires only

an ability to stand/walk for '2 hours during an 8-hour workday.'" *Id.* (quoting SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Essentially, Plaintiff believes that ALJ Farris's RFC assessment is internally inconsistent. The Court disagrees.

ALJ Farris found that prior to April 19, 2016, Plaintiff could perform a range of light work, which would require him to "lift 20 pounds occasionally, stand/walk six hours in an eight-hour workday and sit six hours in an eight-hour workday . . . except he must be able to alternate between sitting and standing hourly." AR at 616. Plaintiff argues that "[i]n practical terms ALJ Farris's physical RFC limits [Plaintiff] to standing/walking for 4 hours and sitting for 4 hours in an 8-hour workday. However, the definition of light work requires that a claimant be able to stand or walk 'off and on, for a total of approximately 6 hours of an 8-hour workday.'" *Doc. 21* at 17 (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)). The plaintiff in *Reed v. Astrue*, Civ. No. 09-1395-JWL, 2011 WL 578740 (D. Kan. Feb. 9, 2011), made a similar argument to no avail. 2011 WL 578740, at *3-*4. There, the ALJ noted that the plaintiff "would need to alternate sitting and standing every 30 minutes." *Id.* at *3 (emphasis and quotations omitted). The plaintiff argued, "[s]imple arithmetic shows that plaintiff, with the 'need to alternate sitting and standing every 30 minutes,' . . . would only be on his feet half of any 8-hour workday. This alternation puts plaintiff in sedentary [work], and not light [work], under the regulations." *Id.* (quotation omitted).

The *Reed* court found that the "[p]laintiff's argument misunderstands the requirements of light work." *Id.* "Work is classified by physical exertion requirements: sedentary, light, medium, heavy, or very heavy; and the category is determined based

upon the amount of physical exertion required in lifting, carrying, pushing, or pulling." *Id.*

(citing 20 C.F.R. §§ 404.1567, 416.967).

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. ***A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work.***

*Id.* at 4 (quoting SSR 83-10, 1983 WL 31251, at *5; citing 20 C.F.R. §§ 404.1567(b),

416.967(b) (defining "light work")). "Although light work usually involves frequent

standing and walking, it may involve sitting most of the time as described in the

underlined portion of the quotation from SSR 83-10 above." *Id.* (citing SSR 83-10, 1983

WL 31251, at *5). "To be considered capable of performing a full or wide range of light

work, you must have the ability to do substantially all of these activities." *Id.* (quoting 20

C.F.R. §§ 404.1567(b), 416.967(b)). "Therefore, the full range of light work is usually

described as work requiring the ability to sit, and stand and/or walk about six hours each

in an eight-hour workday." *Id.* (citing 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10, 1983

WL 31251, at *5-*6).

> Applying these regulations, when a job requires up to twenty pounds of exertion occasionally, and up to ten pounds of exertion frequently, it will be classified as "light work" even if it does not require standing and/or walking as much as six hours in a workday, or even if it requires sitting more than two hours up to about six hours in a workday. As Plaintiff argues, simple arithmetic shows that because Plaintiff must alternate sitting and standing every thirty minutes, he must work at a job that requires or allows sitting and standing at thirty minute intervals, each for half of an eight-hour workday. This fact does not transform the job from "light work" to "sedentary work" – the physical exertion requirements determine the classification of the work.

*Id.*

It is only the *full range* of light work that requires standing or walking for approximately 6 hours in an 8-hour workday. The ALJ did not find Plaintiff capable of a full range of light work – Plaintiff has certain restrictions, and thus may only perform a narrower range of light work. *See id.* "The ALJ's statement defines the limits of 'light work' in general, and the requirement to alternate sitting and standing every [hour] sets the parameters for specific work of which Plaintiff is capable." *Id.*

Importantly, ALJ Farris included these precise limitations in her hypothetical to the VE: "So then assuming a person of the same age, education, and work history as the claimant. Is limited to light work. But must be able to alternate between sitting and standing approximately hourly." AR at 686. The VE replied that Plaintiff could perform the positions of mail clerk and document preparer. AR at 687. "Therefore, both the regulations and the vocational expert testimony support the ALJ's finding that Plaintiff has the RFC for a range of light work." *See Reed*, 2011 WL 578740, at *5.

"The court finds no internal inconsistency in the RFC assessed, and therefore, no error in the ALJ's classification of an RFC for a range of light work." *See id.* For this reason, Plaintiff's further argument, that because he was "an individual 'closely approaching advanced age' for the purposes the Administration's Medical-Vocational Guidelines[,]" a limitation to sedentary work "would dictate a finding of 'disabled[,]'" is unavailing. *See Reed*, 2011 WL 578740, at *5; *see also Doc. 21* at 17-18. ALJ Farris did not limit Plaintiff to sedentary work. Thus, the Court will deny Plaintiff's Motion on this issue.

**B.     The ALJ adequately explained the limitation on Plaintiff's ability to interact with the general public.**

Plaintiff asserts that the ALJ erred by not including a function-by-function assessment with respect to Plaintiff's ability to interact with the public, coworkers, and supervisors. *Doc. 21* at 18-19. The Court finds that any alleged error is harmless and denies the Motion on this issue.

An "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *Sedillo-Romero v. Colvin*, No. 1:14-CV-00821-LF-SMV, 2016 WL 10257482, at *4 (D.N.M. May 12, 2016) (quoting SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996)). "This means the ALJ must consider how the claimant's impairments affect [his] physical abilities, mental abilities, and other abilities." *Id.* In formulating an individual's RFC, an ALJ must perform a function-by-function analysis of the enumerated "[w]ork-related mental activities generally required by competitive, remunerative work[,]" which "include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *5 (quoting SSR 96-8p, 1996 WL 374184 at *6). "The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must 'express those impairments "in terms of work-related functions" or "[w]ork-related mental activities."'" *Id.* (quoting *Jaramillo v. Colvin*, 576 F. App'x. 870, 876 (10th Cir. 2004) (quoting SSR 96-8p, 1996 WL 374184 at *6)).

"However, the Tenth Circuit [has more] recently held that omission of the formulaic analysis set forth in SSR 96-8p can be harmless provided that the ALJ's decision discusses and addresses any pertinent limitations and is otherwise supported by substantial evidence." *Ryan v. Colvin*, No. CV 15-0740 KBM, 2016 WL 8230660, at *8 (D.N.M. Sept. 29, 2016) (discussing *Hendron v. Colvin*, 767 F.3d 951, 954-57 (10th Cir. 2014) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.") (internal quotation omitted)). As will soon become evident, any omission of the function-by-function analysis was harmless here.

Plaintiff rests his argument regarding the ALJ's function-by-function assessment of Plaintiff's mental abilities on criticism of the current model by which the Commissioner assesses the mental disorders of social security claimants and determines the mental RFC. *Doc. 21* at 18-19. Plaintiff offers a 2009 report of the Mental Cognitive Subcommittee, which "was assembled to advise the [Occupational Information Development Advisory Panel] about what psychological abilities of disability applicants should be included in the Content Model and Classification Recommendations made to the Social Security Administration." *See Report of the Mental-Cognitive Subcommittee*, at *C-1 (Sept. 1, 2009), available at https://www.ssa.gov/oidap/Documents/AppendixC.pdf (last visited Jan. 11, 2018); *see also Doc. 21* at 18. The Subcommittee examined the current "conceptual model of psychological abilities required to do work" and recommended that they "should be revised." *Report of the Mental-Cognitive Subcommittee*, at *C-19 (discussing the Subcommittee's recommendations).

Relevant to Plaintiff's case, the Subcommittee "noted that there is no disease or injury that selectively impairs one's ability to interact with the general public but not coworkers or supervisors." *Id.* at *C-12. Plaintiff urges the Court to accept this non-binding "recommendation" as evidence that the ALJ erred in limiting Plaintiff to "only occasional interaction with the public" but finding no limits in his ability to interact with coworkers or supervisors. *Doc. 21* at 18 (quoting AR at 616). Noticeably absent from Plaintiff's recitation of the facts or his argument on this issue is any citation of record evidence to support a showing that Plaintiff's abilities to interact appropriately with either coworkers or supervisors was more than mildly limited. *See Doc. 21* at 12-15, 18-19. *See also Ryan*, 2016 WL 8230660, at *9.

The Commissioner correctly counters that the Subcommittee's Report is neither the Commissioner's stated policy nor binding law. *Doc. 22* at 6. Moreover, the ALJ's mental RFC determination was based on substantial evidence. ALJ Farris's recitation of the evidence relevant to Plaintiff's abilities to interact with the public, coworkers and supervisors included the following:

Plaintiff left a 2009 position in operations management "due to a personality conflict with the owner." AR at 616; *see also* AR at 405, 641.

The agency referred Plaintiff to a consultative examination with Steven Baum, Ph.D. on February 27, 2010, after Plaintiff initially applied for disability benefits, "because the record contain[ed] essentially no mention of mental-health issues to [that] point . . . ." AR at 617; *see also* AR at 404-06. ALJ Farris detailed Dr. Baum's notes from the examination, including the diagnosis of dysthymia and unspecified cluster-B personality disorder, Dr. Baum's opinion that Plaintiff was able to work, and the fact that

Dr. Baum found "no more than mild limitation in any area other than public interaction, where he found moderate limitation." AR at 616 (citing AR at 404-06).

In 2011, Plaintiff "received some formal psychological diagnoses from E.B. Hall, M.D., who identified dysthymia and attention deficit disorder." AR at 618 (citing AR at 575-93). Dr. Hall noted that Plaintiff "specified that his trouble sleeping was due to physical pain[,]" (AR at 618 (citing AR at 588)), and described Plaintiff "as well-groomed, cooperative and organized with normal cognition, speech and thought content" (AR at 618 (citing AR at 592)).

In February 2016, Plaintiff saw Saverio Sava, M.D., who stated that Plaintiff "has difficulty holding positions while social/behavioral interactions are limited only by pain." AR at 618 (citing AR at 1019). Also in February 2016, Kurt Johnson, M.D., examined Plaintiff. AR at 619 (citing AR at 1030-48). Dr. Johnson noted that Plaintiff "denied panic attacks and social anxiety while endorsing PTSD." AR at 619; *see also* AR at 1031. Ultimately, ALJ Farris found it noteworthy that Dr. Johnson identified "no serious psychological problems and [found] only mild-to-moderate symptoms summarized by" a Global Assessment of Functioning of 60. AR at 619 (discussing AR at 1030-48).

ALJ Farris gave little weight to a second consultative examination Plaintiff underwent with Dr. Baum on May 18, 2016. AR at 619 (citing AR at 1049-56). The ALJ noted that while Plaintiff "cited back pain as what prevents him from working[,]" Dr. Baum "delivered an assessment distinct from anything else in the record." AR at 619. Dr. Baum "now found moderate-to-marked limitations in nearly all areas including social interaction, concentration and comprehension of detailed instructions." AR at 619 (discussing AR at 1051). The ALJ noted that Dr. Baum's "functional assessment not

only conflicts with Baum's own earlier opinion but is refuted by the claimant's own work history." AR at 619. The ALJ concluded that "[t]his outlier is simply not supported by any other portion of the record, which undermines its legitimacy, and" she gave it "little weight." AR at 619.

Plaintiff testified that he was "seeing a new psychiatrist for intensified PTSD symptoms, primarily crowded areas where he feels confined." AR at 616; *see also* AR at 647.

The ALJ found that "[d]ue to the moderate psychological limits seen by Dr. Johnson and those providers preceding Baum's more-recent assessment, the [RFC] reflects a limitation on public interaction." AR at 619.

It is clear to the Court that the ALJ considered the work-related mental activities and found no evidence to support more than mild limitations in the areas relating to Plaintiff's ability to interact with coworkers and supervisors. ALJ Farris noted Plaintiff's work history, his generally mild complaints regarding social functioning (highlighting Plaintiff's self-reports denying social anxiety, except for anxiety associated with crowds), and reasonably found moderate limitations only in Plaintiff's ability to interact with the public. As in *Hendron*, the Court finds that "the ALJ did not overlook" any alleged problems with Plaintiff's abilities to interact with coworkers and supervisors; rather, the ALJ "found that the evidence did not support" more than a mild limitation in these areas. *See Hendron*, 767 F.3d at 957. "And, as in *Hendron*, Plaintiff points to no medical evidence showing that [his] impairments preclude [him] from working consistent with the RFC the ALJ formulated. This lack of medical evidence is fatal to [his] claim." *See Ryan*,

2016 WL 8230660, at *9 (citing *Wall*, 561 F.3d at 1067-68; *Rose v. Colvin*, 634 F. App'x.

632, 637 (10th Cir. 2015)). The Court will deny Plaintiff's Motion on this issue.

**C.    The ALJ's analysis under SSR 16-3p and *Luna* was adequate.**

Plaintiff next argues that ALJ Farris failed to analyze Plaintiff's description of his

symptoms according to the process mandated by *Luna* and SSR 16-3p. *Doc. 21* at 19-

21. Ruling 16-3p,[6] which is consistent with the Tenth Circuit's decision in *Luna*, clarifies

the process an ALJ must use when evaluating the intensity and persistence of a

claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017);

*Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (noting that the Tenth

Circuit's approach in *Luna* "is consistent with SSR 16-3p"). Under *Luna*, the ALJ must

consider:

> (1) whether the claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether the impairment is
> reasonably expected to produce some pain of the sort alleged (what we
> term a "loose nexus"); and (3) if so, whether, considering all the evidence,
> both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg*, 688 F. App'x at 545 (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-

67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64)). As part of the final step of this

analysis, SSR 16-3p directs the ALJ to consider certain factors, including the claimant's

daily activities, "[t]he location, duration, frequency, and intensity of pain or other

symptoms[,]" precipitating and aggravating factors, the claimant's medications and their

---

[6] Social Security Ruling 16-3p superseded Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." *Id.* at *2; *see also Thompson v. Berryhill*, No. 16-cv-1222 SMV, 2017 WL 5593511, at *3 (D.N.M. Nov. 17, 2017). Ruling 16-3p is not so much a policy change as it is a clarification, and it is substantially similar to Ruling 96-7p. *See Thompson*, 2017 WL 5593511, at *3; *Mirabel v. Colvin*, 1:15-cv-00869-LF, 2016 WL 8230702, at *5 n.6 (D.N.M. Dec. 30, 2016) (discussing the similarities between the two rulings).

"type, dosage, effectiveness, and side effects[,]" types of treatment (other than medication) for pain-relief or other symptoms, other non-treatment measures the claimant uses to relieve pain or other symptoms, and "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." 2017 WL 5180304, at *7-*8. "The ALJ need not consider these factors in a formalistic way, but the substance must be there." *Brownrigg*, 688 F. App'x at 546 (citing *Keyes-Zachary*, 695 F.3d at 1167).

In this case, Plaintiff asserts that the ALJ failed to "'closely and affirmatively link[]' the description of [Plaintiff's] symptoms with substantial evidence." *Doc. 21* at 20 (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (internal quotations omitted)). The symptoms, which are all relevant to the time period before June 2011, include Plaintiff's self-reports that he "could not reach overhead, could only stand for 15 minutes, and could not turn his head or turn his neck side to side because of pain" (*id.* at 19 (citing AR at 671-74)); he takes naps due to problems sleeping (*id.* (citing AR at 672)); he has difficulty walking and standing and has to elevate his legs due to swelling in his legs (*id.* (citing AR at 668)); and he has problems with his memory (*id.* (citing AR at 668, 681)).[7] *See also Doc. 24* at 6 (noting that a "limitation to sedentary work would trigger the application of the Grids in April 2011"). Plaintiff alleges that ALJ Farris's analysis of Plaintiff's description of his symptoms amounts to boilerplate conclusions without the three-step analysis mandated by *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Doc. 21* at 19-21.

---

[7] The Court notes that Plaintiff did not dispute the Commissioner's assertion that Plaintiff's alleged problem with his memory "was not inconsistent with an inability to perform unskilled work." *Doc. 22* at 9; *see also Doc. 24* at 4-6. Thus, the Court will not examine that limitation.

It is true that the ALJ did use some standard boilerplate language in her finding that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments might be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." AR at 619. ALJ Farris also, however, conducted a thorough review of the objective and subjective evidence and specifically examined many of the necessary factors in considering Plaintiff's subjective reports of his symptoms.

For example, the ALJ commented on Plaintiff's activities of daily living, which included "grocery shopping, some cooking, laundry, and occasional dumping of the trash . . . ." AR at 615. She detailed record evidence regarding his back and leg pain, including his 2007 back surgery (AR at 617 (citing AR at 239-47)); 2008 records from Keith W. Harvie, D.O. at ABQ Health Partners, LLC (AR at 617 (citing AR at 248-69 (noting back pain, but Plaintiff denied numbness, tingling, or leg pain (AR at 249))); 2010 back surgery (AR at 617 (citing AR at 361-85)); a 2010 MRI of the lumbar spine that "identified . . . residual linear fluid and 'minimal' disc bulges[,]" which Doctor Erasmus considered "poor evidence of any abnormality" but Plaintiff complained of "pain radiating into his knee" (AR at 618 (citing AR at 443, 431)); a 2010 appointment with neurosurgeon William Wagner, M.D., who "observed a gait within normal limits and no pain behavior until attempting a lumber facet maneuver" (AR at 618, 476, 479), and noted that Plaintiff's pain "going down his left leg . . . will probably disappear with time" (AR at 618, 473-74, 476-77); Dr. Wagner surmised Plaintiff "may have a 'small neuropathic component of pain' and possibly ischial bursitis, for which he recommended

an injection." AR at 618 (citing AR at 476-77). Plaintiff underwent the injections the next month, "[o]therwise, mild intermittent swelling in the legs characterized the remainder of" 2010. AR at 618 (citing AR at 493, 506). The ALJ then noted that Plaintiff attended physical therapy in 2011. AR at 618 (citing AR at 536-52).

With respect to medications and other treatments Plaintiff has tried, ALJ Farris noted Plaintiff's surgeries, his prescription pain medications (to include a hospitalization for an unintentional drug overdose of Oxycontin, Flexeril, and Neurontin), and physical therapy. AR at 616-18; *see also* AR at 338-60. The ALJ also asked Plaintiff at the hearing about things that trigger his pain. AR at 645.

And, as the Commissioner pointed out, the ALJ noted certain inconsistencies that supported her finding that Plaintiff's subjective reports of his symptoms were not fully supported by the record. *See Doc. 22* at 8-9. These inconsistencies include Plaintiff's report that he stopped working in 2010, not because of pain, but because he and the owner of the business did not see eye to eye. AR at 616, 641. This does not amount to an evaluation of Plaintiff's "overall character or truthfulness," as Plaintiff alleges, but is simply an indication that Plaintiff did not stop working due to his allegations of pain. *See Doc. 24* at 5. Moreover, the ALJ noted that "the record [went] essentially silent for over a year" after 2012; a failure to seek treatment takes away from Plaintiff's claims of disabling pain. AR at 618.

Ultimately, the Court finds that the ALJ's analysis of Plaintiff's subjective symptoms to be adequate under SSR 16-3p and the *Luna* decision. The Court therefore declines to reverse the ALJ's decision on this issue as well.

**D.      The ALJ properly relied on the VE's testimony.**

Plaintiff argues that the job of "document preparer" was precluded in this case,

because the Medical-Vocational Guidelines (the "Grids") "would dictate a finding of

'disabled' at the sedentary level of exertion." *Doc. 21* at 23. It is true that the Grids deem

disabled those "[c]laimants who are capable of performing only sedentary work, are 50

years of age or older, have a limited education, and previously did skilled or semiskilled

work but lack transferable skills[,]" Explanation of Grids, Social Security Disability Law &

Procedure in Federal Court § 3:79 (citing 20 C.F.R. Pt. 404, Subpt. P., App. 2,

§ 201.10), as well as "[c]laimants who are capable of performing only sedentary work,

are 50 years of age or older, have graduated from high school but not recently, and

previously did skilled or semiskilled work but lack transferable skills," *id.* (citing 20

C.F.R. Pt. 404, Subpt. P., App. 2, § 201.14).

But Plaintiff falls in neither of those groups of claimants, because he was not

capable of performing *only* sedentary work—he was also capable of performing a range

of light work. "The grids . . . 'may not be applied conclusively in a given case unless the

claimant's characteristics precisely match the criteria of a particular rule.'" *Casey v.

Barnhart*, 76 F. App'x 908, 910 (10th Cir. 2003) (quoting *Channel v. Heckler*, 747 F.2d

577, 579 (10th Cir. 1984)). "If there is no 'exact fit,' the grids may not be applied

conclusively, and the ALJ must consider all the relevant facts of the case before

reaching a determination." *Id.* (quoting *Channel*, 747 F.2d at 579 (discussing 20 C.F.R.

Pt. 404, Subpt. P, App. 2, § 200.00(a))).

> Because [Plaintiff's] RFC was for a limited range of light work, it fell
> between grid rules for light and sedentary work directing opposite
> conclusions: [Plaintiff] would be disabled under the applicable sedentary-

work rule, 201.10 [or 201.14], but not under the applicable light-work rule, 202.11. In that circumstance, the ALJ was required to determine the degree to which [Plaintiff's] specific limitations eroded the occupational base for light work.

*See Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017) (citing SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983); discussing Program Operations Manual System (POMS) DI 25001.001.B.72).

The Tenth Circuit noted in *Casey* that under SSR 83-12,

2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, [the ALJ is to] consider as follows:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

*Casey,* 76 F. App'x at 910 (quoting SSR 83-12, 1983 WL 31253, at *2-*3).

Here, Plaintiff falls between the rules related to light and sedentary work. ALJ Farris stated that in order "[t]o determine the extent to which [Plaintiff's] limitations eroded the unskilled light occupational base, [she] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and" RFC. AR at 621. The VE testified that given all of these factors, Plaintiff "would

have been able to perform" the jobs of mail clerk and document preparer. AR at 621.

ALJ Farris went on to note that "[a]lthough the [VE's] testimony is inconsistent with the

information contained in the [DOT], there is a reasonable explanation for the

discrepancy. The dictionary does not address sit/stand options, in which case we have

relied upon the [VE's] personal observations and expertise." AR at 621. The ALJ

concluded that "[b]ased on the testimony of the [VE]," Plaintiff was "capable of making a

successful adjustment to other work that existed in significant numbers in the national

economy" prior to April 19, 2016, the date he became disabled. AR at 621.

"Accounting for the erosion, there remained [47,500] jobs in the national

economy . . . ." *See Anders*, 688 F. App'x at 521. The Court acknowledges that the

majority of those 47,500 jobs are at the sedentary level. "It is true that the ruling would

have supported a finding of disability here, because the eroded base 'could indicate little

more than the occupational base for the lower rule and could justify a finding of

Disabled.'" *Casey*, 76 F. App'x at 911 (quoting SSR 83-12, 1983 WL 31253, at *2

(internal quotation marks omitted)). "This language, however, is permissive and does

not mandate such a finding." *Id.* "The ALJ fulfilled [her] obligation to determine

[Plaintiff's] occupational base by consulting a VE to determine whether a person with

claimant's profile could perform substantial gainful work in the economy." *Id.* (citing

*Moore v. Apfel*, 216 F.3d 864, 870-71 (9th Cir. 2000) ("stating that, when a claimant's

exact place between the grids is difficult to determine, SSR 83-12 mandates the use of

a VE, not a finding of 'disabled'"). "Based on the VE's testimony, the ALJ concluded that

[Plaintiff] retained the ability to engage in gainful work and, therefore, was not disabled."
*See id.* Once again, the Court will deny Plaintiff's Motion on this issue.[8]

###### E.    It was appropriate for the ALJ to rely on the VE regarding the available jobs and their numbers.

Plaintiff questions whether 47,500 positions truly exist in the national economy for the two jobs identified by the VE. *Doc. 21* at 23-24. First, Plaintiff argues that "[i]t is unclear whether the job of 'document preparer' exists today" and asks the "Court to take judicial notice" that the position is obsolete. *Id.* Plaintiff cites an unpublished Sixth Circuit case, in which a divided panel found the "document preparer" position is obsolete. *Id.* (citing *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (noting that the "Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continuously updated based on data collection efforts that began in 2001")).

"Plaintiff's contentions on this issue are more a disagreement with the Commissioner's continued reliance on the DOT despite its occupational titles being 'obscure, antiquated, and difficult for a person requiring unskilled work to even determine what they consist of.'" *Milam v. Colvin*, No. 16-CV-00824-CBS, 2017 WL 2438991, at *13 (D. Colo. June 6, 2017) (quotation omitted). "The court does not disagree that 'common sense [should] dictate[ ] that when such descriptions appear obsolete, a more recent source of information should be consulted.'" *Id.* (quoting *Cunningham*, 360 F. App'x. at 615). "However, the DOT is among five sources of

---

[8] Plaintiff begins this section by noting that it is "not clear which methodology VEs use to provide [the] number of jobs for some occupations described in the DOT." *Doc. 21* at 21. Plaintiff does not, however, claim error in *this* case based on what the VE used, and the Court declines to make any findings on this issue.

'reliable job information' noted in the Commissioner's regulations." *Id.* (quoting 20 C.F.R. § 416.966(d)). "That regulation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Id.* (citing *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 558 (2012)). "Plaintiff's concern is better addressed to the Commissioner in a request to amend the regulation." *Id.*

Plaintiff next contends that "because VEs calculate job numbers from a database with a taxonomy not recognized by the SSA (OES), their testimony regarding the number of jobs for 'document preparer' varies wildly." *Doc. 21* at 24-25. Plaintiff points to two other cases regarding the position of "document preparer," one of which noted that there are 14,000 jobs nationally and the other noting 2,500,000 jobs nationally. *Id.* at 25 (citing *Thompson v. Comm'r of Soc. Sec.*, No. CV 15-53 FTM-CM, Order, at 6 (M.D. Fla. Mar. 15, 2016); *Baca v. SSA*, No. CV 16-228 LAM, Mem. Op. & Order, at 7 (D.N.M. Apr. 11, 2017)). The Court finds it interesting that the plaintiff in *Baca*, who was represented by the same attorney who filed this Motion, argued that the number of jobs for "document preparer" given by the VE (2,500,000) was "'unreliable' because the numbers given actually relate to job categories, rather than specific jobs . . . .'" *Baca*, No. CV 16-228 LAM, Mem. Op. & Order, at 16.

At any rate, Plaintiff cites no other case, rule, or regulation that would require the ALJ to question the VE further about the number of jobs the VE found. "[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the [ ] requirement[s] of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Urioste v. Colvin*, No. 13-cv-

02855-MJW, 2014 WL 5465074, at *5 (D. Colo. Oct. 28, 2014) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (internal quotation omitted)); citing SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Here, the ALJ asked the VE if she was "aware that [her] testimony needs to be in accord with the [DOT] and its companion publications[,]" to which the VE responded in the affirmative. AR at 685. The VE also agreed to tell the ALJ "about any variation between [her] testimony and those publications . . . ." AR at 685. Indeed, when she identified the two available jobs, the VE explained that there is no sit/stand option "specifically addressed in the DOT but [her] testimony is based on research and experience into the labor market." AR at 687. The Court finds no error in the ALJ's reliance on the VE's testimony regarding the number of jobs for "document preparer" in the national economy.

**F.**  **Substantial evidence supports the ALJ's finding that jobs that Plaintiff could have performed existed in significant numbers in the national economy prior to April 19, 2016 (the established onset date).**

In the instant case, the VE and the ALJ addressed only the number of jobs available in the national, not regional, economy. In his final argument, Plaintiff contends that "[a] total of 47,500 jobs available in the national economy does not rise to the significant level as defined in 42 U.S.C. § 423(d)(2)(A)." *Doc. 21* at 26. For that proposition, Plaintiff relies on the very thoughtful opinion in *Ladenburger v. Colvin*, No. 15-cv-2182-RM, 2017 WL 1352274 (D. Colo. Apr. 13, 2017). Unfortunately for Plaintiff, I find *Ladenburger* unpersuasive.

In *Ladenburger,* District Judge Raymond Moore declined to conclude as a matter of law that 44,000 jobs in the national economy constitute a "significant number." *Ladenburger,* 2017 WL 1352274, at *4-*5. Judge Moore reviewed cases from the Tenth

Circuit in which the court expressly upheld an ALJ finding certain numbers of jobs in the national economy – 1.34 million and 152,000 – to be "significant." *Id.* at *3 (citing *Raymond v. Astrue,* 621 F.3d 1269, 1264 (10th Cir. 2009) (upholding 1.34 million jobs as significant); *Stoke v. Astrue,* 274 F. App'x 657 (2008) (same, 152,000 jobs). Judge Moore noted that the Commissioner had "fail[ed] to point the Court to any direction from the Tenth Circuit that 44,000 jobs nationally is significant as a matter of law." *Id.* at *4.[9] He insisted that to meet its burden, the Commissioner must point to a past Tenth Circuit decision expressly confirming the number of nationally available jobs at issue constitutes a sufficiently "significant number." Judge Moore held that in the absence of such an explicit finding by the Tenth Circuit, the case must be remanded for the ALJ to perform the so-called *Timiar* analysis (discussed below) even as to jobs available in the **national** economy.

I believe the *Ladenburger* analysis conflates the situations in which the *Trimiar* analysis is not only required, but helpful. In *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir.

---

[9] In fact, there the Commissioner relied on the Tenth Circuit's decision in *Rogers v. Astrue,* 312 F. App'x 138 (10th Cir. 2009). The *Ladenburger* court, however, rejected the Commissioner's view that the *Rogers'* court had "implicitly" found 11,000 nationally available jobs to be a significant number. *Ladenburger* at *3.

The VE in *Rogers* explained the apparent conflict between the DOT and his testimony by detailing that "in his professional experience, 11,000 sedentary hand packer jobs existed in the national economy. . . ." *Rogers* at *4. The Tenth Circuit held that "the ALJ could rely on **that** testimony as substantial evidence to support her determination of nondisability." *Id.* (emphasis added). Therefore, I would agree with Commissioner's position on this point. Indeed, the Tenth Circuit so noted in an unpublished 2016 decision. *Evans v. Colvin,* 640 F. App'x 731, 735 (10th Cir. 2016) ("we implied [in *Rogers*] that 11,000 national jobs was a significant number").

Of course, as an unpublished Order and Judgment, the *Rogers* decision is not precedential even though it can be appropriately cited for its persuasive value. *See* Fed. R. App. P. 32.1(A); 10th Cir. R 32.1(A). In *Evans*, the Tenth Circuit panel affirmed the lower court's finding that *Rogers* was unpersuasive because "the figure [at issue in *Rogers*] was stated in dictum and harmless error was not at issue." *Id.* The Tenth Circuit did not dispute this assertion by the district court.

1992), the court noted a number of factors courts may consider in evaluating whether the number of **regional** jobs is significant, "including: (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and, (5) the types and availability of such work." *Padilla v. Berryhill*, No. 16-106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (citing *Trimiar*, 966 F.2d at 1330). The "multi-factorial analysis" required by *Trimiar* focuses on factors relevant in analyzing the true "availability" of local job opportunities on a more particularized inquiry as to the specific claimant under consideration. That seems quite logical in the context of assessing truly "available" jobs regionally. Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues.

Moreover, as the post-*Trimiar* Tenth Circuit has explained, "the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy."[10] *Raymond*, 621 F.3d at 1274. "In fact, the Sixth Circuit in *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir.1999), explicitly stated that '[t]he Commissioner is not required to show that job opportunities exist within

---

[10]   The *Raymond* court further detailed its rationale:

> In 42 U.S.C. § 423(d)(2)(A), for example, Congress prescribed that "[a]n individual shall be determined to be under a disability only if . . . [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country." *Id.* (emphasis added).

*Raymond*, 621 F.3d at 1274.

the local area.'" *Id.* Thus, the *Raymond* court found "no reasoned basis" for reaching a different result even where the VE had identified only 385 jobs available statewide. *Id.*

In her decision here, ALJ Farris expressly stated that prior to April 19, 2016, jobs that Plaintiff could perform "existed in significant numbers in the national economy" and that conclusion was "[b]ased on the testimony of the vocational expert. . . ." AR at 621. The issue, therefore, is clearly presented in this case – did the ALJ properly determine that 47,500 available jobs constitute a "significant number" in the national economy such that Plaintiff is not disabled?

Although it would be helpful if the Tenth Circuit had expressly so held in the past, I do not believe, as did Judge Moore, that such a holding is required in order to affirm the ALJ's decision. Rather, the court can look to other persuasive authorities that have addressed the question of when one can find that a certain number of jobs in the national economy can qualify as a "significant number." The Ninth Circuit specifically found that "25,000 jobs meets the statutory standard" as a nationally significant number if the jobs are available in several regions of the country. *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 528-29 (9th Cir. 2014). The Eighth Circuit expressly upheld an ALJ's determination that 30,000 jobs constitute a significant number in the national economy. *Long v. Chater,* 108 F.3d 185, 188 (8th Cir. 1997). And, as discussed in footnote 9 of this Opinion, I agree with the Commissioner and Magistrate Judge Khalsa from this District that the Tenth Circuit implicitly found 11,000 nationally available jobs to be a significant number in the *Rogers* case. *Rogers,* 312 F. App'x 138, at *4 (10th Cir. 2009); *see also Padilla*, 2017 WL 3412089, at *12.

In making these observations, I am fully cognizant of the often-quoted words of caution given by the Tenth Circuit to its lower courts:

> This court has made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation."

*Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (citing *Trimiar*, 966 F.2d at 1330). That powerful warning, however, came in the context of evaluating only whether 100 **statewide** jobs constitute a significant number in the local economy. *Id.* Because the ALJ in *Allen* had failed to perform the more searching *Trimiar* assessment as to those regional jobs, the lower court appropriately remanded. Of significance here, the availability of jobs in the **national** economy played no role in the *Allen* analysis.

In summary, the Court finds that the *Trimiar* analysis does not extend to the question of whether there are significant numbers of **nationally** available jobs that a claimant can perform. *See Padilla,* 2017 WL 3412089, at *12 (citing *Raymond v. Astrue*, 356 F. App'x 173 (10th Cir. 2009); *Botello v. Astrue*, 376 F. App'x 847 (10th Cir. 2010)). The Court further finds that substantial evidence supports the ALJ's finding that jobs existed in significant numbers in the national economy that Plaintiff could have performed prior to April 19, 2016.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 21*) is **denied**.

**IT IS FURTHER ORDERED** that the Court will enter concurrently herewith a

Final Order, pursuant to Rule 58 of the Federal Rules of Civil Procedure, affirming the

decision of the Acting Commissioner and dismissing this case with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent